made a false statement, whether the material was published, whether it was negligent, or whether the plaintiff was injured. However, the court finds that there is no genuine issue even pled as to whether DNI intentionally defamed Mucci or acted with utter disregard for the manner in which these facts were presented and, therefore, finds that the defendant has met its summary judgment burden of demonstrating that it did not act with the constitutionally required degree of fault.

The motion of the defendant for summary judgment is sustained. This is a final appealable order and there is no just cause for delay.

*So ordered.*

The STATE of Ohio

v.

TORIELLO.

Summit County Municipal Court, Ohio.

No. 95 TRC 11574.

Decided July 26, 1995.

*Roger R. Bauer*, for defendant.

ROBERT H. COLOPY, Judge.

The case came to the court on defendant's motion to dismiss charges of violating R.C. 4511.19(A)(1) and 4511.19(A)(3) relating to an alleged offense involving operating a motor vehicle while under the influence of alcohol. The grounds for this motion are that the defendant has already had her driver's license suspended pursuant to the administrative license suspension ("ALS") provisions of R.C. 4511.191 and that further criminal prosecution would be a violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

■ The court notes that this issue is now being litigated in municipal courts throughout the state and that opinions have been published which have reached opposite conclusions on this issue (*State v. Uncapher* [1995], 70 Ohio Misc.2d 4, 650 N.E.2d 195, prosecution after ALS suspension does not create double jeopardy; *State v. Ackrouche* [1995], 70 Ohio Misc.2d 34, 650 N.E.2d 535, ALS bars further criminal prosecution). The court also notes that the two Ohio courts of appeals which have considered this topic have reached different results (*State v. Gustafson* [June 27, 1995], Mahoning App. No. 94 C.A. 232, unreported, 1995 WL 387619, prosecution after ALS suspension violates double jeopardy; *State v. Miller* (May 12, 1995), Auglaize App. No. 2–94–32 unreported, 1995 WL 275770, no double jeopardy in prosecution after ALS suspension). The court is also aware that trial and appellate courts in a number of other jurisdictions have also considered this issue. *Hawaii v. Higa* (1995), 79 Hawai'i 1, 897 P.2d 928; *State v. Hanson* (Minn.App. 1995), 532 N.W.2d 598. The Seventh District Court of Appeals which decided the *Gustafson* case appears to be the only appellate court in the country which has found that prosecution for a D.U.I. offense after an automatic license suspension violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

The court has reviewed these cases, the arguments presented and the cases cited in the defendant's brief. It notes that at the present time, there is no published Ninth District or Ohio Supreme Court opinion on this issue. The defendants cite a number of recent United States Supreme Court cases as authority for the proposition that an ALS suspension bars subsequent prosecution for a D.U.I. offense. *United States v. Halper* (1989), 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487; *Austin v. United States* (1993), 509 U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488; *Dept. of Revenue of Montana v. Kurth Ranch* (1994), 511 U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767. In particular, the defendants rely on *Kurth Ranch* to support their position.

*Kurth Ranch* involved the imposition of a tax of almost $900,000 on marijuana grown in a large drug operation after the defendants had been convicted of criminal drug charges. The court noted that taxes on illegal activities are traditionally viewed as punitive and penal in nature rather than remedial. The court found that the size and rate of the tax was so disproportionate to the offense that it lost any function as a remedial or revenue-raising device. The court found that even though the imposition of the tax was a civil proceeding, it constituted a second punishment for the same offenses which were the basis for the earlier criminal charges. It therefore held that imposition of the marijuana tax after a criminal prosecution violated the Double Jeopardy Clause of the Fifth Amendment.

The court finds that the facts and circumstances of *Kurth Ranch* are distinguishable from an ALS suspension followed by a criminal prosecution for a D.U.I. offense. In the first place, the court finds that *Kurth Ranch* does not stand for the proposition that the imposition of a civil sanction which has any punitive purpose or impact bars subsequent criminal prosecution for the same conduct that led to the civil penalty, or vice versa.

The defendant cites *United States v. $405,089.23 U.S. Currency* (C.A.9, 1994), 33 F.3d 1210, as authority for that proposition. The court notes, however, that this federal Court of Appeals opinion from the Ninth Circuit is not binding on this court, and the case in question has not, as of yet, been reviewed by the United States Supreme Court.

The court also notes, along with Judge Randall of the Minnesota Court of Appeals, that to adopt the defendant's view that the imposition of civil sanctions which have any punitive character bars later criminal prosecution and penalties for the same conduct (or vice versa) would seriously call into question numerous administrative, environmental and licensing regulations and procedures on both the federal and state level. *Hanson, supra,* 532 N.W.2d at 604. This court does not believe that the rulings of the United States Supreme Court on double jeopardy imply this type of result.

A key issue for courts who have applied the holdings in *Halper* and *Kurth Ranch* to automatic license suspension/driving under the influence cases has been whether automatic license suspensions can be characterized as remedial or punitive in nature. The court acknowledges that an immediate license suspension after a D.U.I. arrest is intended both to punish the driver and to promote highway safety (see the concurring opinion of Judge Crippen in *Hanson, supra,* 532 N.W.2d at 606). The court, however, finds that there is a strong state interest in removing drunk drivers from the road as quickly as possible. An ALS suspension is a legitimate means for the legislature to further this state interest and to promote highway safety. *State v. Starnes* (1970), 21 Ohio St.2d 38, 50 O.O.2d 84, 254 N.E.2d 675; *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 54 O.O.2d 254, 267 N.E.2d 311; *Columbus v. Adams* (1984), 10 Ohio St.3d 57, 10 OBR 348, 461 N.E.2d 887.

■ The basic teaching of *Halper* and *Kurth Ranch* is that a dual system of civil and criminal sanctions for the same conduct must be reviewed for double jeopardy purposes on a case-by-case basis. A reviewing court must determine whether the civil sanctions are so disproportionate to the size of the criminal penalties and the nature of the offense that the civil sanctions cease to have any remedial purpose and become purely punitive.

This court has considered the seriousness of the offense of drunk driving and its threat to the public safety and has balanced this against the impact of an automatic driver's license suspension on defendants. The court has also weighed the system of ALS suspensions against the level of criminal penalties for D.U.I. offenses.

The court also notes that appellate courts in Ohio and other jurisdictions have consistently held that a license to operate a motor vehicle is a privilege and is not an absolute property right or an inherently fundamental right. *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97; *State v. Newkirk* (1968), 21 Ohio App.2d 160, 50 O.O.2d 253, 255 N.E.2d 851; *Div. of Driver Licensing v. Bergmann* (Ky.1987), 740 S.W.2d 948. A driver's license does confer a limited property interest on its owner, and a person may not be deprived of it without the procedural due process mandated by the Fourteenth Amendment of the United States Constitution or the due course of law provision of the Ohio Constitution. *Bell v. Burson* (1971), 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90. However, an individual's interest in a driver's license is subject to reasonable state regulation to protect the public interest in highway safety and in keeping dangerous drivers off the road. Such regulation may include an immediate suspension of a driver's license after an arrest for a D.U.I. offense without violating due process. *Mackey v. Montrym* (1979), 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321.

The court finds that the Ohio system of automatically suspending a driver's license after a D.U.I. arrest prior to a criminal prosecution is a sanction that is not so disproportionate to the gravity of the offense or the level of criminal penalties for D.U.I. offenses that it changes the nature of the sanction from remedial to punitive.

A license suspension of ninety days for a first D.U.I. arrest or three years for a fourth offense is proportional to the seriousness of the offense in a way that the $130,000 civil penalty for a $585 criminal Medicare fraud in *Halper*, and the almost $1 million tax for marijuana trafficking in *Kurth Ranch*, is not.

The court therefore finds that prosecution and possible punishment of the defendant for alleged violations of R.C. 4511.19(A)(1) and 4511.19(A)(3) after an administrative license suspension pursuant to R.C. 4511.191 does not violate the double jeopardy provisions of the Fifth Amendment to the United States Constitution or Section 10, Article I of the Ohio Constitution.

Defendant's motion to dismiss is hereby denied.

*So ordered.*